This case is before us on an appeal by the defendant, Ira L. Thompson, Jr., from a judgment condemning him to pay a real estate broker's commission of $650. *Page 168 
Plaintiff, a licensed real estate broker in the City of Alexandria, Louisiana, alleged that the sale of defendant's property to a Mr. William D. Farmer came as the result of efforts of Mr. S. R. Cummins, one of plaintiff's real estate salesmen.
Defendant in his answer admitted that his property at one time had been listed with plaintiff, but that this listing had expired long before the negotiations were begun with Mr. Farmer. Defendant in his answer admitted that he went with plaintiff's agent to see Mr. Farmer concerning a sale of his property for a price of $13,000 net to defendant; that Mr. Farmer refused to accept the property at the agent's price of $13,650 ($13,000 net plus $650 real estate commission), and that when the joint efforts of defendant and plaintiff's agent were fruitless, defendant suggested that plaintiff's agent cut his commission and that after his refusal to agree to cut his commission, defendant advised plaintiff's agent that the deal was off; that later in the same day, the prospective purchaser called the defendant direct and that the sale was consummated without further assistance from plaintiff's agent and that consequently, neither plaintiff nor his agent is entitled to the commission sued for.
The sale upon which plaintiff's claim for a commission is based was consummated June 27, 1947. The record shows that defendant made a one month listing of his property with plaintiff on May 18, 1946; that no sale was effected by plaintiff during this period and that on July 25, 1946, defendant on his own initiative sold the property to one James W. Thompson; that on September 4, 1946, this purchaser deeded the property back to defendant; that subsequently, defendant verbally continued negotiations with plaintiff's agent Cummins, who showed defendant's property to prospects in March and April of 1947. One of these prospects, Dr. Bowden, was interested in the property provided an exchange agreement could be worked out. The record shows that defendant went with Cummins to look at the property which was involved in the proposed deal with Dr. Bowden.
On Friday, June 20, 1947, Cummins, plaintiff's agent took Mr. Farmer over to see defendant's property. Defendant was away from home but his father and mother showed Mr. Cummins and his prospect over the premises. Defendant returned home on Sunday, June 22nd and contacted Cummins to inquire about the prospective purchaser. Defendant went to Cummins' home in Pineville; the two of them drove to Mr. Farmer's home. Some thirty minutes to an hour was spent in discussing the proposed sale but no agreement was reached between the parties as Mr. Farmer was unwilling to pay the $13,650 quotation, which included $13,000 net to Mr. Thompson and $650 commission. Defendant drove Mr. Cummins back to his house and on the way asked him if he would cut his commission. This Mr. Cummins declined to do and defendant returned to his home.
About an hour later there was a telephone conversation between defendant and the prospective purchaser. The two arranged to meet at Wainwright's Station in Pineville, where an agreement to sell was entered into. Mr. Farmer paid defendant $500 as evidenced by a "binder" in which defendant agreed to hold the property "off the market" until July 1, 1947.
After this Sunday noon agreement was signed, defendant requested the purchaser to go see his attorney who was familiar with the property and on the following Friday, June 27th, the sale was consummated at a price of $13,000, $3,000 cash and the assumption of a mortgage in the amount of $10,000.
The following paragraph from defendant's brief gives a concise statement of defendant's contention before this Court: "Defendant's position is that there was no contract between himself and the plaintiff for the payment of any commission; that plaintiff's salesman was acting as a free agent in the hope of consummating a sale in excess of a net price quoted by defendant; that plaintiff's real estate salesman did not consummate a sale and refused to cut his commission in order to effect a deal; that he failed to bring the parties together on common terms and had withdrawn from the negotiations after he had exhausted his efforts to make a sale and that defendant resumed negotiations with the prospective purchaser, and since the sale was *Page 169 
made after the parties became deadlocked on a matter of price and the real estate salesman refused to make any concessions regarding the price, that no payment of a real estate commission was due to plaintiff."
We find from the record that the defendant did engage the services of plaintiff's real estate firm in the sale of his home at a price which would bring to defendant $13,000 net; that plaintiff and his agent beginning in March and up to the time of sale, made a serious effort to find a purchaser for defendant's property; that defendant cooperated and went with plaintiff's agent to look over the property which one of the prospective purchasers had offered in an exchange arrangement; that the purchaser Farmer became interested in defendant's property through the efforts of plaintiff's agent; that plaintiff's agent carried Farmer to see defendant's property on Friday; that defendant sought out plaintiff's agent on the Sunday that the sale agreement was made; that he acquiesced in the offer of his property by plaintiff's agent to the prospective purchaser at a price of $13,650, which included plaintiff's commission of $650. We further find that plaintiff's agent did not withdraw from the negotiations at the time defendant drove the agent home after the Sunday morning visit with the prospective purchaser. We conclude that the Sunday negotiations remained very much alive and that when the defendant resumed negotiations within an hour after leaving plaintiff's agent, and concluded a written purchase agreement a few minutes later, there had been no deadlock or break-off of negotiations.
The authorities cited in the cases of Jeter Monroe v. Daniels, La. App., 25 So.2d 911 and White v. Havard et ux., La. App., 25 So.2d 108, justify the District Court's judgment for plaintiff. Plaintiff produced, in the person of Farmer, a party who was interested in the purchase of defendant's property, and his failure to actually perform his final work of closing the sale is plainly attributable to the refusal of defendant to continue to deal with plaintiff's agent and to defendant's action in dealing with the purchaser directly.
The fact that the defendant reduced the price in order to effect the sale does not release defendant from his liability to pay plaintiff a commission on the sale price. Grace Realty Co. v. Peytavin Planting Co., Inc., et al., 156 La. 93, 100 So. 62, 43 A.L.R. 1096.
For the reasons assigned, the judgment appealed from is affirmed, with costs.